# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| JOHN JOHNSON, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **MO:21-CV-053-DC** |
| | § | |
| PARSLEY ENERGY OPERATIONS, | § | |
| LLC, | § | |
| *Defendant*. | § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

BEFORE THE COURT is United States Magistrate Judge Ronald C. Griffin's Report and Recommendation ("R&R") filed on February 14, 2022, in connection with Defendant Parsley Energy Operations LLC's ("Defendant" or "Parsley") Motion to Compel Arbitration. (Docs. 57, 40). Parsley filed Objections to the R&R. (Doc. 59). Plaintiff John Johnson ("Plaintiff" or "Johnson") filed a response to Parsley's Objections (Doc. 61), and Parsley filed a reply supporting its Objections (Doc. 61). After due consideration, the Court **ADOPTS** the R&R (Doc. 57) and **DENIES** Parsley's Motion to Compel Arbitration. (Doc. 40).

## I.    BACKGROUND

This case arises under the Fair Labor Standards Act ("FLSA"). (Doc. 1). Johnson alleges he worked for Parsley as a Drilling Fluids Consultant from May 2018 until May 2019. (Doc. 13 at 1). Johnson further claims Parsley paid him a flat amount for each day worked, regardless of the number of hours worked and failed to compensate him with overtime pay for hours he worked in excess of forty hours in a workweek, in violation of the FLSA. (*Id.* at 2).

The Motion to Compel Arbitration filed by Parsley argues Johnson worked for Parsley as an independent contractor. (Doc. 40 at 6). According to Parsley, Johnson was hired by RUSCO Operating, LLC ("RUSCO"), a wholly owned subsidiary of RigUp, Inc. ("RigUp"), to provide

services to Parsley as an independent contractor.   (*Id.*). Johnson and RUSCO executed an "Agreement Between Independent Professional & RigUp for Use of RigUp Service" (the "Service Agreement"), including a dispute resolution provision.   (*Id.* at 7) (citing Doc. 25-2). The dispute resolution provision incorporates the arbitration language in the "Terms of Services" (the "Terms") (together with the Service Agreement, the "Agreement") signed by Plaintiff. (Doc. 25-2 at 4 ¶ 14).   The Agreement explains disputes between Johnson and RigUp "will be resolved by binding arbitration."  (Doc. 25-3 at 14).  In relevant part, the Terms also state:

> **17. Third Party Disputes.** RIGUP IS NOT AFFILIATED WITH ANY SERVICE PROVIDER, OPERATOR, VENDOR, OR THIRD PARTY SERVICE, AND ANY DISPUTE YOU HAVE WITH ANY SERVICE PROVIDER, OPERATOR, VENDOR, THIRD PARTY SERVICE, OR OTHER THIRD PARTY . . . IS DIRECTLY BETWEEN YOU AND THAT THIRD PARTY[.]

(Doc. 25-3 at 10).  In the Motion to Compel, Parsley seeks to enforce the arbitration agreement executed by Johnson and RUSCO as a non-signatory.  (Doc. 40).

The Magistrate Judge issued the R&R recommending the denial of Defendant's Motion to Compel Arbitration.  (Doc. 57).  First, the Magistrate Judge found that deciding an arbitration agreement's enforceability remains a question for the court based on *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022).  (*Id*. at 5).  Second, the Magistrate Judge found that Johnson's claims against Parsley do not fall within the plain language of the arbitration provision based on *Newman*.  (*Id*. at 6).  Third, the Magistrate Judge found that intertwined-claims estoppel does not apply to allow Parsley to enforce the Agreement's arbitration provision as a non-signatory.  (*Id*. at 7–9).  Defendant objects to each finding.  (Doc. 59).

## II.   Legal Standard

Any party who desires to object to a Magistrate Judge's findings and recommendations must serve and file written objections within fourteen (14) days after being served with a copy of

the findings and recommendations.  28 U.S.C. § 636(b)(1).  Failure to file written objections to the R&R within fourteen (14) days after being served with a copy shall bar that party from *de novo* review by the district court of the proposed findings and recommendations.  *Id.*

Moreover, except upon grounds of plain error, it shall also bar the party from appellate review of proposed factual findings and legal conclusions accepted by the district court to which no objections were filed.  *Id.*; *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *United States v. Wilson*, 864 F.2d 1219 (5th Cir. 1989) (per curiam).

The Federal Arbitration Act (FAA) provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA allows a party that has entered an arbitration agreement to request an order compelling the parties to proceed with arbitration.  9 U.S.C. § 4.  If the court is "satisfied" that a cause of action is subject to an enforceable arbitration provision, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  The Supreme Court of the United States has repeatedly affirmed that the FAA established "a liberal federal policy favoring arbitration agreements."  *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (stating that the FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract") (internal quotations and citations omitted)).

Courts perform a two-prong inquiry when determining whether to compel a party to arbitrate: (1) whether the parties agreed to arbitrate, and (2) whether a federal statute or policy

overrides the parties' agreement to arbitrate. *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009). The first prong of the inquiry has two parts: (1) "whether a valid agreement to arbitrate exists" and (2) "whether the dispute falls within that agreement." *Id*. "Beyond this analysis, the courts generally do not delve further into the substance of the parties' disputes." *Id*. at 886–87. Typically, both questions are decided by the court. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).

In analyzing whether there is a valid arbitration agreement between the parties, courts apply state contract law, looking at general contract principles to determine validity. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 431 (5th Cir. 2004). Courts are guided by "background principles of state contract law regarding the scope of agreements (including the question of who is bound by them). *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). Consequently, an arbitration agreement may be enforced by or against a non-signatory to the contract through traditional principles of state contract law. *Id.*; *see also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261 (5th Cir. 2014) ("*Arthur Andersen* instructs that a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on, *inter alia*, equitable estoppel if the relevant state contract law so permits.").

### III.    DISCUSSION

### A.    Deciding an Arbitration Agreement's Enforceability Is a Question for the Court

Pursuant to *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393 (5th Cir. 2022), the Court—not the arbitrator—decides whether Johnson must arbitrate with Parsley. *Newman* involves nearly identical issues to the present case. There, the plaintiff did not have an arbitration agreement with the defendant; and the plaintiff agreed to arbitrate all claims arising out of his employment with the staffing company that sent him to the defendant. *Newman*, 23

F.4th at 397–98.  In *Newman*, the defendant and the staffing company argued the plaintiff was required to arbitrate with the defendant because: (1) the incorporation of the AAA rules in plaintiff's agreement with the staffing company acted as a delegation clause and delegated issues of arbitrability to an arbitrator; and (2) the defendant could enforce the staffing company's agreement using intertwined claims estoppel under Texas law.  The United States Court of Appeals for the Fifth Circuit rejected both arguments.  *Id.* at 398–400, 404–07.  There is no question that under Fifth Circuit precedent, the question of whether a nonsignatory can enforce an arbitration agreement is a question of contract formation for the Court to resolve.

Defendant argues that the Magistrate Judge disregarded *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 711 (5th Cir. 2017).  Defendant contends *Brittania-U* stands for the proposition that when a plaintiff agrees to delegate arbitrability to the arbitrator, the arbitrator must decide whether the plaintiff's claims against non-signatories are arbitrable.  The Court disagrees with Defendant's interpretation.  *Brittania-U* and the case it cites, *Contec v. Remote Solution, Co*., 398 F.3d 205 (2d Cir. 2005), allow a non-signatory to enforce someone else's delegation clause when the non-signatory defendant was an agent or corporate affiliate of a signatory.  That is not the case here.  Parsley is not an agent or affiliate of RUSCO.  Further, Johnson did not sue RUSCO.

As explained previously by this Court, the fact that the Agreement between Plaintiff and RUSCO delegates arbitrability of disputes between Plaintiff and RUSCO to the arbitrator does not automatically render Plaintiff's claims against Defendant subject to arbitration.  *See, e.g.*, *Hinkle v. Phillips 66 Co.*, No. P:20-CV-00022-DC, 2021 WL 4399724, at *4 (W.D. Tex. Aug. 25, 2021).  The Fifth Circuit clarified that the first step is determining "whether an enforceable arbitration agreement exists at all."  *See Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393,

398 (5th Cir. 2022).   The formation question is a question for the Court.   *Id.* at 400. Accordingly, the Court **OVERRULES** Defendant's objection and **ADOPTS** the R&R on this ground.

### B.      The R&R Correctly Rejects Intertwined Claims Estoppel

Defendant next argues that intertwined claims estoppel applies and allows it to enforce the arbitration agreement between Plaintiff and RUSCO.   (Doc. 59 at 4).   Under intertwined claims estoppel, a non-signatory to an arbitration agreement is entitled to compel arbitration "if the relevant state contract law so permits."   *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261 (5th Cir. 2014).   The theory requires that a "close relationship" exist between the non-signatory defendant and one of the signatories and that the claims be "intimately founded in and intertwined with the underlying contract obligations."   *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016).   "It applies when there is a 'tight relatedness of the parties, contracts, and controversies.'"   *Hays*, 838 F.3d at 610 (quoting *JLM Indus., Inc. v. Stolt-Nielsen, SA*, 387 F.3d 163, 177 (2d Cir. 2004)).

Intertwined claims estoppel requires "a relationship between the parties that developed in a manner that makes it 'unfair' *not* to compel arbitration."   *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 639 (Tex. 2018) (emphasis in original) (citation omitted).   This does not include "a relationship of any kind."   *Id.*   Instead, the relationship between the non-signatory and the signatory must be more "than being 'merely independent participants in a business transaction."   *V3 Constr. Co., LLC v. Butler*, No. 02-20-00171-CV, 2021 WL 519912, at *1 (Tex. App.—Fort Worth Feb. 11, 2021, no pet. h.) (quoting *Jody James*, 547 S.W.3d at 639). Although the Supreme Court of Texas has not adopted intertwined claims estoppel, it has discussed the theory.   The Court focuses "on the principle that arbitration is 'a matter of consent,

not coercion.'" *Jody James*, 547 S.W.3d at 640 (citations omitted).  Moreover, the Supreme Court of Texas, turning to Second Circuit precedent, noted that most cases compelling arbitration "typically involve some corporate affiliation between a signatory and a non-signatory, *not just a working relationship*." *Id.* (emphasis added).

In *Randle*, a sister court held that the non-signatory had not shown a sufficiently close relationship to support intertwined claims estoppel in a similar situation.  *See Randle v. Metro. Transit Auth. of Harris Cty.*, No. CV H-18-1770, 2018 WL 4701567, at *9 (S.D. Tex. Oct. 1, 2018) (unpublished).  There, Metro (the non-signatory) contracted with Yellow Cab[1] (the signatory) to provide drivers for a service provided by Metro in Harris County, Texas.  *Id.* at *1. The service offered free or subsidized transportation to disabled and elderly residents.  *Id.*  The agreement between Metro and Yellow Cab allowed Yellow Cab to enter into subcontractor agreements for the service.  *Id.*  Pursuant to that agreement, Yellow Cab entered into individual agreements with drivers, including the plaintiff.  *Id.*  The drivers would pay Yellow Cab a service fee in exchange for the right to drive the service's routes.  *Id.*  Two agreements executed by Yellow Cab and the plaintiff, which allowed the plaintiff to drive under Yellow Cab's agreement with Metro, contained arbitration provisions.  *Id.* at *2.  In May 2018, the plaintiff filed suit against Metro, raising claims under the FLSA.  *Id.*  In response, Metro sought to enforce the arbitration agreements between the plaintiff and Yellow Cab.  *Id.*  The Southern District of Texas held the relationship between Metro and Yellow Cab did not appear sufficiently close, despite the plaintiff's suggestion that Metro began a joint employment relationship with Yellow Cab.  *Id.* at *9.  Rather, the district court noted that close relationships "typically include a non-signatory owner, agent, or parent of a signatory company."  *Id.*

1. The agreement was executed by Metro and Greater Houston Transportation Paratransit, Inc.  *See Randle*, 2018 WL 4701567, at *1.  However, it applied to Greater Houston Transportation Paratransit, Inc.'s sister companies, including Yellow Cab.  *Id.*

Like in *Randle*, the non-signatory (Parsley) is not an owner, agent, or parent of the signatory (RUSCO).  Nor does Parsley establish a similarly close relationship with RUSCO.  Thus, Parsley is not entitled to enforce the arbitration agreement executed by RUSCO and Johnson.  Moreover, Defendant's reliance on *Trujillo* is misguided as the Court has already found that Defendant does not have a close relationship with RUSCO.  *See Newman*, 23 F.4th at 406 (distinguishing *Trujillo* in similar circumstances).  Because Parsley lacks the necessary "close relationship" with RUSCO for intertwined claims estoppel to apply, the analysis ends there.  For these reasons, the Court **OVERRULES** Defendant's objection and **ADOPTS** the R&R on this ground.

## IV.   CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the R&R (Doc. 57) and **DENIES** Defendant's Motion to Compel Arbitration (Doc. 40).

It is so **ORDERED**.

SIGNED this 3rd day of May, 2022.

DAVID  COUNTS
UNITED STATES DISTRICT JUDGE