IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **JOHN JOHNSON,**     *Plaintiff*, | § § § |
| v. | § §    MO:21-CV-00053-DC-RCG |
| **PARSLEY ENERGY OPERATIONS, LLC,**     *Defendant*. | § § § § |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Parsley Energy Operations, LLC's Motion to Stay. (Doc. 44). This motion is before the undersigned through an Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. (Doc. 8). After due consideration of the parties' briefings and arguments at the March 10, 2022 hearing, and the applicable case law, the undersigned **RECOMMENDS** that Parsley's Motion to Stay be **GRANTED** and the case be **ADMINISTRATIVELY CLOSED**. (Doc. 44).

### I.  BACKGROUND

John Johnson ("Johnson") filed this lawsuit on April 1, 2021 against Parsley Energy Operations, LLC ("Parsley")[1] alleging that Defendants misclassified him as an independent contractor and paid him a day rate without overtime compensation in violation of the Fair Labor Standards Act ("FLSA"). (Doc. 1). Thereafter on May 28, 2021, Johnson filed an Amended Complaint. (Doc. 13). Within his Amended Complaint Johnson alleges that he worked for Parsley as a drilling fluids consultant from approximately May 2018–May 2019. *Id*. at 1.

---

[1] Johnson originally named Pioneer Natural Resources Company as a defendant, but filed a motion voluntarily dismissing his claims against Pioneer on July 9, 2021, and Pioneer was officially dismissed from the instant lawsuit on September 23, 2021. (*See* Docs. 33, 34, 35).

On June 14, 2021, the staffing company, RUSCO Operating, LLC ("Rusco") filed a Motion to Intervene, which the undersigned denied on October 22, 2021. (*See* Docs. 25, 39). Then, on November 2, 2021, Parsley filed its Motion to Compel Arbitration, through which it sought to compel Johnson to arbitrate his claims against Parsley on the basis of a contract Johnson signed with the staffing company Rusco, but to which Parsley was a nonsignatory. (*See* Doc. 40).

On November 9, 2021, Rusco initiated an arbitration against Johnson. (Doc. 44 at 7). Rusco's Demand for Arbitration explains the dispute as:

> In related litigation, Respondent has asserted that he was misclassified as an independent contractor, and was in fact an employee, during a period of time including May 2018 through February 2019 (the "Relevant Time"). Respondent further contends that his classification as an independent contractor violated the Fair Labor Standards Act. Throughout the Relevant Time, Respondent operated through Claimant's staffing-company service and performed work for the benefit of Parsley Energy Operations, LLC ("Parsley"). Claimant disputes Respondent's contention that he was an employee, not an independent contractor, during the Relevant Time. Claimant therefore seeks a declaratory judgment that when Respondent performed work for the benefit of Parsley during the Relevant Time, he was properly classified as an independent contractor, not an employee.

*Id*. at 8 (quoting Docs. 44-1 at ¶ 2; 44-3 at ¶ 5). Meanwhile, on November 17, 2021, while Parsley's Motion to Compel Arbitration was pending before the Court and after Rusco initiated an arbitration proceeding against Johnson, Parsley filed its Motion to Stay Case subject to and in the alternative to its Motion to Compel Arbitration. *See id*. at 5 n.1, 7. Johnson filed his Response to Parsley's Motion to Stay on December 3, 2021 and Parsley filed its Reply on December 8, 2021. (Docs. 52, 53). On February 14, 2022, the undersigned entered a Report and Recommendation to United States District Judge David Counts recommending that Parsley's Motion to Compel Arbitration be denied. (*See* Doc. 57).

On February 25, 2022, the Court entered an Order Setting Joint Hearing regarding Parsley's Motion to Stay. (Doc. 58). At said hearing, the Court ordered both parties to file supplemental briefing addressing the Motion to Stay. In accordance with the Court's order, on March 23, 2022, Parsley filed its Supplement to Motion to Stay Case and Johnson filed his Supplemental Response. (Docs. 64, 65). This matter is now ready for disposition.

## II. LEGAL STANDARD

Pursuant to § 3 of the Federal Arbitration Act ("FAA"),

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is **referable to arbitration under such an agreement**, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

While the Fifth Circuit previously held that § 3 typically applied only to the signatories to an arbitration agreement, it has become clear that "§ 3 gives a non-signatory litigant standing to apply for a stay when the litigation involves 'any issue referable to arbitration.' " *Waste Mgmt., Inc. v. Residuos Indus. Multiquim, S.A. de C.V.*, 372 F.3d 339, 342–43 (5th Cir. 2004). *Waste Mgmt*. articulated three factors, now known as the "*Waste Management* factors," which courts are to use in evaluating whether an issue is referable to arbitration by a non-signatory. *Id.* at 343.

However, post-*Waste Mgmt.*, the Supreme Court issued *Arthur Andersen LLP v. Carlisle*, stating that "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 if the relevant state contract law allows him to enforce the agreement." 556 U.S. 624, 632 (2009). In *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, the Fifth Circuit reiterated the Supreme Court's *Arthur Andersen* decision, asserting that "whenever the relevant state law

3

would make a contract to arbitrate a particular dispute enforceable by a nonsignatory, that nonsignatory is entitled to request and obtain a stay under § 3 and an order to compel arbitration under § 4 because the dispute is 'referable to arbitration under an agreement in writing.' " 748 F.3d 249, 257 (5th Cir. 2014).

Somewhat contrary to its decision in *Crawford*, the Fifth Circuit issued *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, in which it found that non-signatories, even those who themselves cannot enforce the arbitration agreement, may apply for, and receive, a § 3 stay. 828 F.3d 356. In *Rainier*, the court recognized that the facts of the particular case made it so that "the only signatories to arbitration agreements with the Investors were some of the Rainier parties, and they proceeded to arbitration." *Id*. at 360. Yet, the non-signatory party, who could not proceed to arbitration, could still apply for a stay in litigation under § 3, which the Fifth Circuit characterized as "subject to the district court's *discretion*" and "only warranted if: (1) the arbitrated and litigated disputes involved the same operative facts; (2) the claims asserted in the arbitration and litigation were 'inherently inseparable'; and (3) the litigation had a 'critical impact' on the arbitration." *Id*. (quoting *Waste Mgmt.*, 372 F.3d at 343) (emphasis added).

Thus, to determine if an issue is referable to arbitration under § 3 of the FAA when the stay is applied for by a non-signatory who cannot enforce the underlying arbitration agreement, the court must evaluate the three *Waste Mgmt.* factors. Ultimately, a court's main focus should be "whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Waste Mgmt.*, 372 F.3d at 343.

### III.   DISCUSSION

Contending that a stay is mandatory, Parsley first argues that the main issue in this case— whether Johnson was properly classified as an independent contractor by Parsley—is identical to

the issue being arbitrated. (Doc. 44 at 9–10). Second, Parsley asserts that the arbitration and the case involve the same harm and are inherently inseparable—Johnson's claim that he was misclassified as an independent contractor and thus did not receive overtime wages. *Id.* at 12. Third, Parsley avers if the Court were to decide "that Johnson was an employee, it would be difficult to imagine an arbitrator's ruling otherwise." *Id.* at 14. Lastly, in the event the Court finds a mandatory stay is not warranted, Parsley puts forth the same arguments for a discretionary stay. *Id.* at 14.

Instead of addressing the three factors mentioned previously, Johnson's arguments rely upon this Court's denial of Parsley's Motion to Compel Arbitration (Doc. 52), stating that the issue of whether Johnson was an independent contractor is not referable to arbitration under § 3 because Johnson did not agree to arbitrate disputes with Parsley (Doc. 52 at 4–5). Thus, Johnson argues, a stay is not appropriate because the Court has already ruled that Parsley cannot enforce the arbitration agreement between Johnson and Rusco. *Id.*

A. *Mandatory Stay*

The *Rainier* Court explained that "[a] stay of [] other parties' litigation [is] [] subject to the district court's discretion." 828 F.3d at 360. As such, "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. [However,] [t]hat decision is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). In other words, when the party seeking a § 3 stay cannot enforce the arbitration agreement itself, the Court may discretionarily evaluate the merits of a request for a § 3 stay by analyzing the *Waste Mgmt.* factors.

This case involves Parsley's, a non-signatory to the arbitration agreement, invocation of a § 3 stay under the FAA. Therefore, because of Parsley's status as a non-signatory who cannot enforce the arbitration agreement under Texas law, the Court may exercise its discretion in deciding whether a § 3 stay is necessary and appropriate. But the Court is not required to issue a mandatory stay. As such, under *Waste Mgmt.*, a stay is not mandatory and the undersigned **RECOMMENDS** that a mandatory stay be **DENIED**.

B. *Discretionary Stay*

The Court will now evaluate whether a discretionary stay is appropriate in light of the *Waste Mgmt.* factors.

**1. Whether the Arbitrated and Litigated Disputes Involve the Same Operative Facts**

Parsley argues that both the arbitration and the litigation here involve the same operative facts, *i.e.*, whether Johnson worked as an employee or an independent contractor during his time with Parsley. (Doc. 44 at 10). Instead of arguing the contrary, Johnson contends that he did not agree to arbitrate whether he worked as an employee or as an independent contractor for Parsley and that what Rusco "seeks in arbitration is expressly tied to the dispute between Johnson and Parsley." (Doc. 52 at 5) (citing Doc. 47-1 at 2).

Although based on slightly different facts, the Court finds *Qualls v. EOG Ress., Inc.* instructive. No. H-18-666, 2018 WL 2317718 (S.D. Tex. May 22, 2018). In *Qualls*, the plaintiff worked for EOG Resources, Inc. ("EOG") and was hired through a third party, Bedrock PC 1099 ("Bedrock"). *Id.* at *1. Qualls filed suit against both EOG and Bedrock for violating the FLSA, claiming he was misclassified as an independent contractor. *Id.* EOG eventually moved for a stay pending arbitration between Bedrock and Qualls. *Id.* The *Qualls* Court referred to a number of facts in concluding that the claims involved the same operative facts, including that in both cases

the plaintiff alleged that "he performed work for EOG through Bedrock and that he was not paid overtime"; that both cases would require considering "which company exercised control over him"; and that the same facts—the work performed for both companies—would be determinative in which company exercised control of Qualls. *Id.* at *2.

Here, both the litigation and arbitration hinge, to a large degree, on Johnson's status as an employee or an independent contractor during his time with Parsley. As Parsley argues in its Motion to Stay, the determinative issues do in fact include "the 'degree of control exercised by the alleged employer,' the 'extent of the relative investments of the worker and the alleged employer,' the 'degree to which the worker's opportunity for profit and loss is determined by the alleged employer,' the 'skill and initiative required in performing the job,' and the 'permanency of the relationship.' " (Doc. 44 at 10) (quoting *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019)). Analyzing these issues for both the litigation and arbitration will involve looking to the work Johnson did for Parsley. Given that the litigation and arbitration seek to determine whether Johnson was Parsley's employee, the Court finds that the same operative facts exist in both.

2. **Whether the Claims Asserted in the Arbitration and Litigation are Inherently Inseparable**

"When the claims only involve one harm, the litigation and arbitration are inherently inseparable." *Qualls*, 2018 WL 2317718, at *2. Furthermore, "it is the violated right that matters, not the purported remedy," meaning that, although an arbitration and litigation may seek different remedies, this is not dispositive of separability. *Waste Mgmt.*, 372 F.3d at 345. Parsley asserts that the harm—"Johnson's alleged misclassification as an independent contractor and his thus 'not being paid overtime for the work he performed for [Parsley] through [RUSCO]' "—is

7

one and the same for both the litigation and the arbitration. (Doc. 44 at 12) (citing *Qualls*, 2018 WL 2317718, at *2). While Parsley acknowledges that the proceedings seek different remedies, it maintains that "in the Parsley Litigation, Parsley asserts its right to treat Johnson as an independent contractor; in the RUSCO Arbitration, RUSCO asserts that same right." *Id.* at 13.

Johnson as stated above, sued alleging FLSA violations, claiming that he was misclassified as an independent contractor and therefore did not receive overtime pay. Johnson's classification is also essential to the arbitration, as "[Rusco] disputes [Johnson]'s contention that he was an employee, not an independent contractor, during the Relevant Time." *Id* at 8 (quoting Doc. 44-1 at ¶ 2). Thus, the Court finds that both the arbitration and litigation arise from one harm—Johnson's alleged misclassification as an independent contractor—and are inherently inseparable.

### 3.  Whether the Litigation will have a Critical Impact on the Arbitration

Parsley avers that resolution of the litigation prior to resolution of the arbitration would significantly impact the progression of the arbitration and that "denying a stay would 'render the arbitration redundant.' " (Doc. 44 at 14) (quoting *MobileMedia Ideas LLC v. Research in Motion Ltd.*, 2012 WL 10464129, at *1 (N.D. Tex. 2012). The *Waste Mgmt.* Court determined that the arbitrator in that case, "[g]iven the binding effect of a federal judgment, as well as the factual similarities in [plaintiff's] asserted claims, . . . would necessarily be strongly influenced to follow the court's determination." 372 F.3d at 345. Given that the Court has found that this case and Rusco's arbitration are based on the same operative facts and are inherently inseparable, the Court further finds that the litigation would strongly influence the arbitrator and therefore potentially destroy Rusco and Johnson's right to a meaningful arbitration.

\*   \*   \*

The Court finds here that Parsley is entitled to a discretionary stay. Parsley has demonstrated that: 1) Parsley's litigation and Rusco's arbitration are based on the same operative facts; 2) Parsley's litigation and Rusco's arbitration are inherently inseparable; and 3) the conclusion of the litigation would have a critical impact on Rusco's arbitration. Therefore, pursuant to the *Waste Mgmt.* factors, the Court finds a discretionary stay to be warranted.

### IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Parsley's Motion to Stay be **GRANTED**. (Doc. 44).

It is **FURTHER RECOMMENDED** that this case be **ADMINISTRATIVELY CLOSED** pending conclusion of the arbitration proceedings.

It is **FURTHER RECOMMENDED** that the parties file a status report updating the Court as to the status of the arbitration **six (6) months** after adoption of this Report and Recommendation; and that, post-arbitration, the parties are to file a motion to reinstate should they wish for the case to be re-opened.

SIGNED this 3rd day of May, 2022.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).